IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Karen Langenfeld, | : | |
| Plaintiff | : | Civil Action 2:13-cv-00469 |
| v. | : | Judge Frost |
| Armstrong World Industries, Inc., | : | Magistrate Judge Abel |
| Defendant | : | |

# ORDER

This matter is before the Magistrate Judge on defendant Armstrong World Industries, Inc.'s ("Armstrong") January 22, 2014 motion to compel production of medical information (doc. 32). In its First Set of Interrogatories and Requests for Production of Documents, Armstrong requested that plaintiff identify her treating physicians. Armstrong also requests the plaintiff sign several standard authorizations/releases to obtain records from plaintiff's medical providers. Plaintiff objected to identifying her treating physicians and refused to execute any releases.

<u>Plaintiff's claims and damages sought</u>. The complaint alleges claims for gender discrimination and violations of the FMLA. In 2012, Langenfeld told Armstrong that her husband was suffering from serious heart issues. She requested FMLA leave to care for her husband following his open-heart surgery. The complaint further asserts that Armstrong terminated Langenfeld's employment before she could take FMLA for her husband's early November 2012 surgery.

In response to interrogatories, plaintiff indicates that she seeks damages for garden variety pain and suffering caused by defendant's unlawful act. Plaintiff said that she has not sought any medical or psychological treatment for that pain and suffering.

When questioned during her deposition about the facts supporting her claim that she is entitled to damages for pain and suffering, Langenfeld testified that Armstrong discriminated against her because of her gender and that she

> was retaliated against and Armstrong interfered with my husband's open heart surgery. There was a great deal of stress and sleepless nights and those kinds of things involved with that.

Karen Langenfeld's December 19, 2013 deposition, p. 519, Doc. 39-1, PageID 349. When asked about the physical manifestations of the emotional distress she suffered, Langenfeld responded: "There was a tremendous amount of stress and sleepless nights. To lose my job at the time of my husband's open heart surgery." *Id.*, p. 523, PageID 351. She testified that the stress continued as she has been hunting for a job. *Id*. Her sleeplessness has continued. *Id.*, p. 524, PageID 352.

Arguments of the Parties. During her deposition, plaintiff acknowledged that she was seeking damages for pain and suffering. She also testified that she is taking prescription medications. She refused to testify what medications were prescribed or what conditions the medications were intended to treat. Plaintiff also refused to identify any of the healthcare providers who have treated her over the past 10 years or whether she was under the care of a mental health professional, counselor, psychiatrist or psychologist while she was employed by Armstrong or following her termination. Plaintiff

2

refused to disclose whether she had discussed her claims against Armstrong and their underlying factual support with her healthcare providers.

Armstrong argues that a plaintiff waives any privilege by putting her medical or mental condition at issue. Armstrong contends that by alleging that she has suffered emotional distress and pain and suffering, plaintiff has waived any privilege and placed her medical and mental condition, including records regarding her treatment for these conditions, squarely at issue. Plaintiff's attempt to characterize her emotional distress claim as "garden variety" does not alleviate her obligation to produce records. Medical records which might tend to show other stressors in her life at about the same time could account for some or all of her emotional suffering and are discoverable. Arstrong requests that the Court order plaintiff to identify her health care providers and permit it to obtain information on whether there were any other stressors which could account for some or all of the emotional suffering that plaintiff attributes to her termination. For instance, plaintiff's husband underwent treatment for a significant medical condition at the same time she was terminated from her employment, which is evidence of the existence of other emotional stressors independent of her termination and Armstrong should be allowed to explore the level of impact these stressors, in addition to any others, had on her emotional state. Armstrong maintains that it would be fundamenally unfair to allow plaintiff to proceed to trial claiming that Armstrong caused her to suffer emotional distress while not allowing it the ability to discover whether other stressors affected her as much or more than the loss of her employment.

In response to Armstrong's motion, plaintiff argues that she fully responded to the interrogatory identified in the motion and has no further responsive information. Plaintiff maintains that she has alleged garden variety emotional damages, that is, damages limited to the typical negative emotional impact on the plaintiff that obviously flow from the defendant's alleged misconduct. Plaintiff maintains that no basis exists to compel disclosure of Langenfeld's private medical information.

Plaintiff argues that her medical history is not at issue because her FMLA claims arise from her husband's serious medical conditions. Plaintiff maintains that Armstrong impermissibly seeks irrelevant and confidential medical records because she has never put her medical history, physical or mental condition or medical records at issue in this case. Plaintiff argues that even if her medical records are discoverable, the execution of blank medical releases is not an appropriate mechanism for delivering those records to Armstrong. Rather, if ordered to do so, Langefeld will obtain and produce her medical records and would seek *in camera* review of any portion of records that unduly prejudice Langenfeld or implicate the privacy rights of Langenfeld or any other third-party, including her spouse.

Langenfeld contends that the Court should deny defendant's motion because she has not sought medical treatment for any physical, mental, emotional, or psychological injury, condition, disability or symptom caused by her termination, and, as a result, no such documents exist.

Plaintiff further argues that medical records concerning treatment of a mental or emotional condition are privileged from disclosure. According to plaintiff, where a plaintiff alleges only garden variety emotional damages, there is no exception to the general rule of privilege.

<u>Discussion</u>. Interrogatory No. 6 asks:

> Does Plaintiff claim that she suffered or incurred any physical, mental, emotional, or psychological injuries, conditions, disabilities, or symptoms as a result of her employment with Defendant, the cessation of that employment or any actions allegedly taken by Defendant?

Doc. 32-1 at PageID# 234. Plaintiff responded, in part:

> . . . Plaintiff alleges that Defendant's conduct caused her garden variety pain and suffering and emotional distress, for which she has not received treatment from any doctor or medical provider.

Doc. 32-4 at PageID# 289.

<u>Federal law of privilege applies</u>. Here both federal and Ohio law claims are pleaded. Consequently, the federal common law of privilege controls.[1]

<u>Psychotherapist-patient privilege</u>. There is no federal physician-patient privilege.[2] In *Jaffe v. Redmond*, 518 U.S. 1, 15 (1996), the United States Supreme Court recog-

---

[1]The United States Court of Appeals for the Sixth Circuit held in *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) that when the evidence is relevant to a federal claim "the existence of pendent state law claims does not relieve us of our obligation to apply the federal law of privilege."

[2]*Dodson*, 958 F.2d at 1372-73; *Mann v. University of Cincinnati*, 114 F.3d 1188, 1997 WL 280188 at *4 (6th Cir. May 27, 1997); *G.M.C. v. Director of Nat. Inst. etc.*, 636 F.2d 163, 165 (6th Cir. 1980). *See, Whalen v. Roe*, 429 U.S. 589, 602 at n. 28 (1976)(Asserting that no attorney-client privilege was recognized at common law.)

nized a psychotherapist-patient privilege for the first time.  Well before *Jaffe*, the United States Court of Appeals for the Sixth Circuit recognized the privilege.[3]  However, it has made "no attempt . . . to define the appropriate perimeters of the privilege," concluding that its scope must be determined case-by-case.[4]

Waiver of the psychotherapist-patient privilege.  In *Jaffe*, the Court acknowledged that the privilege could be waived, "We do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist."[5]  The party asserting the privilege has the burden of proving that it has not been waived.[6]

The case law is often described as including two approaches to waiver.  A *broad approach* finds waiver whenever a party puts his or her mental status at issue.  A *narrow approach* finds waiver only when a party affirmatively offers expert evidence of his or her psychological condition.  These approaches are summarized in *Fitzgerald v. Cassil*, 216 F.R.D. 632, 636-37 (N. D. CA 2003):

---

[3]*In re Zuniga*, 714 F.2d 632, 639 (6th Cir. 1983); *United States v. Snelenberger*, 24 F.3d 799, 802 (6th Cir. 1994).

[4]*Id*.

[5]*Id*. at 18, n.19.

[6]*Merrill v. Waffle House, Inc.*, 227 F.R.D. at 474; *Fitzgerald v. Cassil,* 216 F.R.D. at 636.

On the one end of the spectrum there is the broad approach to waiver. Under the broad approach, courts have held that a simple allegation of emotional distress in a complaint constitutes waiver. *See Sarko v. Penn-Del Directory Co.,* 170 F.R.D. 127 (E.D.Penn.1997); *Doe v. City of Chula Vista,* 196 F.R.D. 562 (S.D.Cal.1999). Under the narrow approach, at the other end of the spectrum, courts have held that there must be an affirmative reliance on the psychotherapist-patient communications before the privilege will be deemed waived. *See Vanderbilt v. Town of Chilmark,* 174 F.R.D. 225 (D.Mass.1997); *Hucko v. City of Oak Forest,* 185 F.R.D. 526 (N.D.Ill.1999).[1]

The rationale behind the *Sarko* line of cases is generally based on fairness considerations. *See, e.g., Doe,* 196 F.R.D. at 566, 569. That is, if a plaintiff claims emotional distress, then a defendant needs to be able to challenge that claim thoroughly; psychological records can illuminate, for instance, whether there are sources of the emotional distress other than the defendant's conduct.

The theory behind the *Vanderbilt* line of cases is generally based upon the primacy of the privacy interests inherent in the privilege and *Jaffee's* rejection of the balancing approach. . . . . The broader measure of fairness underpinning *Sarko* and the broad waiver approach would render the psychotherapist-patient privilege pointless: "[T]he very nature of a privilege is that it prevents disclosure of information that may be relevant in the case, in order to serve interests that are of over-arching importance." *Hucko,* 185 F.R.D. at 530.

In addition, the *Vanderbilt* line of cases relies upon an analogy to the attorney-client privilege which is waived when the client affirmatively relies on attorney-client communications to further her own claim. *See Vanderbilt,* 174 F.R.D. at 229. . . . Thus, as with the case of waiver of the attorney-client privilege, there may be a waiver of the psychotherapist-patient privilege if the communication between the two is put at issue by the patient, for example, where the cause of action relies on advice or findings of the psychotherapist. *See Vanderbilt,* 174 F.R.D. at 229. Under this measure of fairness, waiver prevents the privilege from being used as both a shield and a sword. *See id.* at 229-30.

> [1]For a discussion of the broad and the narrow approaches to waiver, see *Certainty Thwarted[: Broad Waiver Versus Narrow Waiver of the Psychotherapist-Patient Privilege After Jaffee v. Redmond,* 52 Hastings L.J. 1369, 1375-76 (2001).]

Broad waiver does not give sufficient weight to the privacy interests identified in *Jaffe* that underpin the psychotherapist-patient privilege. And it creates the potential for great abuse.[17] During mental health counseling, patients may disclose the most intimate details of their social lives as well as expose their innermost emotional and mental life. Many would not seek treatment if they believed that these disclosures would be published to others:

> [T]he psychotherapist-patient privilege is "rooted in the imperative need for confidence and trust." Treatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests. Effective psychotherapy, by contrast, depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

*Jaffe*, 518 U.S. at 10 (Citations omitted).

Litigation is a competitive, adversary process. When a claim of emotional distress is made, there is a tendency to gather all information related to a party's mental

---

[17]*Fitgerald*, 216 F.R.D. at 638; *Burrell v. Crown Central Petroleum, Inc.*, 177 F.R.D. 376, 383 (E.D. Tex. 1997).

health.  Even when just "garden variety" emotional distress damages are claimed, defendants will often seek the plaintiff's mental health treatment records–of any and every description–going back 5, 10, or even 20 or more years.  If these records are obtained, then the plaintiff is questioned at length during her deposition about the most intimate details of her relationships and her interior life.

This combative, pull out all the stops approach to discovery is inconsistent with the goal of litigation: To fairly–and with finality–resolve disputes.  It also fails to recognize a central reality of litigation.  Most litigants are in court reluctantly and against their will.  In a very real sense, both the employee and the employer are involuntarily caught up in a lawsuit.  Most employees who bring employment discrimination lawsuits believe that they have been treated badly by their employer and that they have suffered adverse employment actions in violation of the law.  They file suit to enforce a right they believe should have been accorded them without dispute in the work place.  On the other hand, the employer believes that they made lawful employment decisions and should not have been hauled into court by a disgruntled employee.

Given that courts are forums for resolving disputes between parties who are reluctantly litigating because they see no alternative other than abandoning their legal rights, judges must make every effort "to secure the just, speedy, and inexpensive determination of every action."[18]  The normal demands on litigants are disruptive, intrusive, and time consuming.  Without good reason, courts should be reluctant indeed

---

[18]Rule 1, Fed. R. Civ. P.

9

to add to those burdens by permitting broad ranging discovery into a litigants most personal and private life.

By filing suit to vindicate a legal right and seeking damages for the emotional distress naturally resulting from the deprivation of that right, an employee who does not rely on expert evidence to support that claim should not be forced to expose the records of her mental health treatment to the adversary process and–potentially–to the world. *Womack v. Wells Fargo Bank, N.A.,* 275 F.R.D. 571, 572 (D. Minn. 2011). Factors to consider when determining whether a litigant has placed his or her medical or psychological condition in controversy include: (1) pleading a claim for intentional or negligent infliction of emotional distress; (2) seeking damages for an identified psychological condition; (3) alleging severe emotional distress; (4) offering expert testimony about a psychological condition; and (5) expressly placing his or her mental condition at issue. *O'Sullivan v. Minnesota,* 240 F.R.D. 325, 328 (D. Minn. 1997); *Womack*, 275 F.R.D. at 572-73. The employer is not unfairly disadvantaged by the employee's reliance on non-expert evidence to prove her emotional distress damages:

> While the privilege may bar access to medical records, the defendant may cross-examine the plaintiff, as was done in the instant case, about other stressors or contributing factors that may explain or have contributed to the alleged emotional distress. The occurrence and dates of any psychotherapy including that which occurred before the incident is not privileged and subject to discovery. *See Vanderbilt,* 174 F.R.D. at 230. The defendant can examine percipient witnesses or find other evidence to show, for example, that plaintiff's description of his or her distress is exaggerated. It may elicit from the plaintiff the fact that the plaintiff did not seek and obtain treatment or therapy for the alleged distress. These examples illustrate that the defendant has numerous avenues through which it can make

> its case without delving into the plaintiff's confidential communication with his or her therapist. *Cf. Doubleday v. Ruh,* 149 F.R.D. 601, 607 (E.D. Cal.1993) (noting that, to overcome qualified work product privilege, party must demonstrate "a 'substantial need' for the qualified work product, as well as an inability to obtain the information from other sources without undue hardship"); Fed.R.Civ.P. 26(b)(3) (providing for qualified work product privilege). Finally, the defendant benefits by the guarantee that the plaintiff will not present expert evidence at trial.

*Fitzgerald*, 216 F.R.D. at 638.

Here plaintiff asserts she is making a garden variety emotional distress claim. She denies getting treatment for the emotional distress defendant allegedly caused her, but she has not said whether she has received psychological treatment during the period at issue. I assume she is not going to offer expert testimony regarding her emotional distress claim, but her brief does not expressly state that. I do not read her deposition to state that Langenfeld seeks damages for psychological disabilities or to claim an exacerbation of a pre-existing psychological disability. If she is making those claims, then discovery about her psychological treatment would be relevant.[19]

Defendant argues that Langenfeld's ongoing emotional distress entitles it to discover her psychological treatment. It is true that there is case law stating that if a plaintiff does not make a claim for ongoing mental, emotional or psychological injury, then defendant is not entitled to discovery of her psychological treatment:

> While a plaintiff who places her actual mental condition at issue must acquiesce to discovery demands designed to explore other possible causes of her mental condition, a plaintiff who merely claims she has suffered the sort of damages that would ordinarily flow from the alleged wrong has

---

[19]See, *Fitzgerald*, 216 F.R.D. at 636.

11

> not placed her actual mental condition at issue, and medical discovery is therefore unlikely to lead to admissible evidence. Even if a plaintiff's medical records were marginally relevant in these circumstances, moreover, their discovery would be unduly burdensome in light of any likely benefit. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

*Butler v. Rue 21*, 2011 U.S. Dist. LEXIS 42392, at *6-7 (E.D. Tenn. Apr. 19, 2011). A similar analysis was made in *Kennedy v. Cingular Wireless, LLC*, Case No. 2:06-cv-00975, 2007 U.S. Dist. LEXIS 60926 (S.D. Oh. Aug. 20, 2007), a case upon which defendant relies. The *Kennedy* Court indicated that in cases where a plaintiff seeks "garden variety" damages for emotional distress caused by the termination of employment, medical records showing other stressors at or about the same time that could account for some of the plaintiff's emotional suffering are discoverable. The *Kennedy* plaintiff, however, only sought "compensatory damages for the emotional distress that normally accompanies a wrongful discharge, such as humiliation and loss of earning potential." The plaintiff further stated that he would not support his claim for emotional distress with any evidence "beyond that normally accompanying wrongful termination." *Id.* The court stated:

> If Mr. Kennedy were to limit his testimony at trial on this issue to the fact that he felt embarrassed or humiliated by his allegedly wrongful termination, and he was willing to stipulate that such embarrassment or humiliation did not continue for any significant period of time beyond the date of termination or cause him any type of emotional distress thereafter, a cogent argument could be made that any other stressors present in his life, whether revealed in records of medical treatment or elsewhere, are completely irrelevant. On the hand, if he is making a more traditional claim for emotional injury which would include testimony or evidence, either direct or indirect, which would permit the jury to award damages for some type of ongoing conse-

> quences from the humiliation or embarrassment or distress caused by the termination, then he would be making what the courts have described as a "garden variety" claim, which would, in turn, make the presence of other stressors in his life discoverable.

*Kennedy*, 2007 U.S. Dist. LEXIS 60926, at *8-9.

Plaintiff here maintains that she is seeking only garden variety emotional distress damages, defined as damages limited to the typical negative emotional impact on the plaintiff that obviously flow from the defendant's alleged misconduct and are considered simple or usual. While her testimony was that she continued to experience emotional distress, she related that distress to the fact that at the time of her deposition she was still conducting a job search. I cannot say that it is in any way unusual for an employee who alleges she was wrongfully fired to continue to experience emotional distress during the course of her attempt to secure new employment. The length of time alone is not an indicia of a permanent psychological injury. The fact that she has not sought treatment for the emotional distress also suggests that she does not view the emotional distress to be a permanent psychological injury.

To the extent that plaintiff intends to limit her testimony at trial on this issue to that she gave during her deposition, and that she is willing to stipulate that her stress, embarrassment, and humiliation did not continue for any significant period of time beyond the date of termination and re-employment or cause her any type of emotional distress requiring treatment, defendant's motion to compel production of medical information is DENIED. If this is not a fair characterization of plaintiff's intent, however,

13

defendant is entitled to discovery. To the extent that defendant is entitled to further discovery, plaintiff is not compelled to sign medical releases permitting Armstrong to obtain all of her treatment records. If Langenfeld's medical records are discoverable, Langenfeld is DIRECTED to obtain her medical records and produce them to Armstrong. Langenfeld may seek *in camera* review of any records she believes are unduly prejudicial or implicate privacy rights.

Conclusion. For the reasons stated above, Armstrong World Industries, Inc.'s January 22, 2014 motion to compel production of medical information (doc. 32) is DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P., and Eastern Division Order No. 91-3, pt. F, 5, either party may, within fourteen (14) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge.  The motion must specifically designate the Order, or part thereof, in question and the basis for any objection thereto.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

s/Mark R. Abel  
United States Magistrate Judge

14