**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**KAREN LANGENFELD,**

**Plaintiff,**

**v.**

**Case No. 2:13-cv-469**
**JUDGE GREGORY L. FROST**
**Magistrate Judge Mark R. Abel**

**ARMSTRONG WORLD INDUSTRIES, INC.,**

**Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Armstrong World Industries, Inc.'s objections to the Magistrate Judge's April 8, 2014 Order (ECF No. 43) and memorandum in support of those objections (ECF No. 44), as well as Plaintiff Karen Langenfeld's response in opposition (ECF No. 46). For the reasons that follow, the Court **SUSTAINS** the objections (ECF Nos. 43 & 44), **SETS ASIDE** the Magistrate Judge's April 8, 2014 Order (ECF No. 40), and **GRANTS** Defendant's motion to compel production of medical information (ECF No. 31).

### I. BACKGROUND

This case involves Defendant's alleged violations of the Family and Medical Leave Act ("FMLA") (29 U.S.C. § 2601 et seq.), Title VII (42 U.S.C. § 2000e-2), and Ohio's equal employment statute (Ohio Rev. Code § 4112.02). For the alleged FMLA violations, Plaintiff seeks damages for economic losses. For the alleged Title VII and § 4112.02 violations, Plaintiff seeks compensatory damages for both economic and non-economic losses, including damages for pain and suffering.

The present dispute involves the scope of discovery to which Defendant is entitled on the issue of Plaintiff's claimed mental and emotional distress. Defendant propounded the following discovery requests on Plaintiff:

**INTERROGATORY NO. 6**

> Does Plaintiff claim that she suffered or incurred any physical, mental, emotional, or psychological injuries, conditions, disabilities, or symptoms as a result of her employment with Defendant, the cessation of that employment or any actions allegedly taken by Defendant? If so, for each physical, mental, emotional, or psychological injury, condition, disability, or symptom that Plaintiff contends was caused, exacerbated, or contributed to by her employment with Defendant, the cessation of that employment or any actions allegedly taken by Defendant, please identify:
>
> (a) the nature of the injury, condition, disability, or symptom;
> (b) the incident, event, or action allegedly causing the injury, condition, disability, or symptom;
> (c) the name, mailing address, and telephone number for any doctor or medical provider with whom Plaintiff consulted or is currently consulting for the injury, condition, disability, or symptom, and the date(s) of such consultation; and
> (d) any diagnosis, prognosis, treatment, or medication Plaintiff has received as a result of the injury, condition, disability, or symptom.

**INTERROGATORY NO. 7**

> Has Plaintiff ever been a patient of, consulted with, or been treated by any medical professionals, nurses, therapists, psychologists, psychiatrists, counselors, or other health care providers in the past ten (10) years? If so, for each state:
>
> (a) the name, address, and telephone numbers; and
> (b) the approximate date and reason for the consultation, treatment, or visit.

(ECF No. 32-1, at 8–9.)

Defendant also served Plaintiff with requests for production seeking any documents that support, reference, or relate to her claim for non-economic damages. (*Id*. at 27–35.) In conjunction with those requests, Defendant requested that Plaintiff execute releases to allow it to obtain medical records directly from her medical providers. (ECF No. 32-2.)

Plaintiff responded to the above-referenced Interrogatories by objecting on several grounds. (ECF No. 32-4, at 3.) Plaintiff answered that she "alleges that Defendant's conduct caused her garden variety pain and suffering and emotional distress, for which she has not received treatment from any doctor or medical provider." (*Id.*) Plaintiff refused to produce any medical records or execute the medical releases.

Defendant filed a motion to compel, arguing that Plaintiff's medical information is discoverable under Federal Rule of Civil Procedure 26. (ECF Nos. 31 & 32.) Plaintiff responded that her medical information is irrelevant to the present lawsuit and is privileged from disclosure. (ECF No. 37.) Plaintiff claims that, by seeking only "garden variety" emotional distress damages, she did not put her mental state at issue so as to waive any privilege applicable to her medical records. Plaintiff also asserts that, even if her medical records are discoverable, she should be permitted to request those records and produce them to Defendant, rather than sign the releases. On this latter point, Defendant argues that signing releases is the most efficient way to produce medical records, and that Plaintiff should be compelled to produce all such records subject to the Agreed Protective Order entered on September 23, 2013. (ECF No. 39 (Defendant's reply); ECF No. 21 (Agreed Protective Order).)

The Magistrate Judge denied Defendant's motion to compel. In his April 8, 2014 Order, the Magistrate Judge held that the federal psychotherapist-patient privilege protects Plaintiff's medical records from disclosure. (ECF No. 40.) The Magistrate Judge acknowledged that some courts have adopted a broad approach to waiver and held that any allegation of emotional distress waives the privilege; however, he elected to follow a line of cases in which courts took a more narrow approach, holding that a plaintiff claiming emotional distress only places his/her medical condition in controversy and waives the privilege in certain circumstances. The

Magistrate Judge concluded that Plaintiff did not place her medical condition at issue so as to waive the psychotherapist-patient privilege in this case.

Defendant timely objected to the Magistrate Judge's Order pursuant to Federal Rule of Civil Procedure 72(a). The Court now considers those objections.

## II. STANDARD OF REVIEW

Under Rule 72(a), a party may object to a magistrate judge's order on nondispositive matters. The district judge must consider those objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "Review under Rule 72(a) provides 'considerable deference to the determinations of magistrates.' " *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995) (quoting 7 Moore's Federal Practice ¶ 72.03).

## III. ANALYSIS

Rule 26 governs discovery in federal courts. Pursuant to Rule 26, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The parties dispute whether Plaintiff's medical information is discoverable in this case.

### A. Interrogatory No. 6

As an initial manner, the Court addresses Plaintiff's contention that she fully answered Interrogatory No. 6 by claiming "garden variety pain and suffering and emotional distress." That response is insufficient to identify the nature of any injury, condition, disability, or symptom she is claiming. *See, e.g., Butler v. Rue 21, Inc.*, No. 1:11-CV-9, 2011 WL 1484151, at *2 (E.D. Tenn. Apr. 19, 2011) (noting that courts use the term "garden variety" to mean different things and that simply labeling a claim as such is "unhelpful"). When asked about her symptoms of the

alleged emotional distress in her deposition, Plaintiff responded that she suffered "a great deal of stress and sleepless nights" that continued through the date of the deposition. (ECF No. 44-1, at 32.) Such symptoms clearly are responsive to Interrogatory No. 6. Plaintiff therefore must amend her response to identify with specificity the nature of damages she is claiming. If Plaintiff does not wish to pursue any injuries, conditions, disabilities or symptoms resulting from Defendant's alleged conduct, she must state that fact.

Having resolved the dispute with respect to Interrogatory No. 6, the issue becomes whether medical information related to other stressors in Plaintiff's life—i.e., information regarding medical treatment sought at or around the same time Plaintiff experienced the emotional distress she claims in this case—is discoverable. The Court begins its analysis by examining whether such information is relevant under Rule 26.

**B. Relevance**

As stated above, Plaintiff testified that Defendant's discrimination caused her to suffer stress and sleep deprivation. Other stressors in Plaintiff's life at the time of the alleged discrimination—especially those that may have caused sleep deprivation—are relevant. *Cf. White v. Honda of Am. Mfg., Inc.*, No. 2:07-CV-216, 2008 WL 5431160, at *2–3 (S.D. Ohio Dec. 31, 2008) (finding that medical records reflecting stressors in the plaintiff's life at or around the time she claimed to have suffered emotional distress were relevant under Rule 26(b)(1)). Medical records revealing those other stressors and the extent to which they may have caused sleep deprivation therefore are directly relevant to Plaintiff's claims.

Although Defendant's discovery requests encompass that information, they also go too far in requesting irrelevant information. Specifically, the information sought in Interrogatory No. 7—which would encompass routine medical appointments over the last ten years—exceeds

the scope of relevant information to which Defendant is entitled. That Interrogatory therefore must be limited to treatment in the last ten years that relates or could relate in any way to Plaintiff's mental state and/or her alleged stress and sleep deprivation. So limited, the question becomes whether the requested information and corresponding medical records are privileged.

**C. Privilege**

In his Order, the Magistrate Judge correctly stated that the federal common law of privilege applies to this dispute. (ECF No. 40, at 5 (citing *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992)).)[1] Plaintiff's argument that "Ohio law recognizes that records from medical providers are privileged and exempt from disclosure," (ECF No. 46, at 4), does not dictate the outcome of the Court's analysis.

It is well-settled that, under the federal common law, there is no physician-patient privilege. *See, e.g.*, *Hancock*, 958 F.2d at 1374. Plaintiff's objection in her discovery responses that the information sought is "protected by the physician-patient privilege," (ECF No. 32-4), is improper. To the extent Plaintiff possesses responsive medical information that is not covered under the psychotherapist-patient privilege discussed below, that information must be disclosed.

The United States Supreme Court recognized the psychotherapist-patient privilege in *Jaffee v. Redmond*, 518 U.S. 1 (1996). Prior to *Jaffee*, the Sixth Circuit had recognized the privilege. *See In re Zuniga*, 714 F.2d 632, 639 (6th Cir. 1983). The privilege covers "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." *Jaffee*, 518 U.S. at 15; *see also United States v. Hayes*, 227 F.3d 578, 581–82 (6th Cir. 2000). The privilege does not, however, cover the patient/psychotherapist's identity, the time of treatment, and/or the fact that any such treatment took place. *Zuniga*, 714

[1] In *Hancock*, the Sixth Circuit expressly held that, in a case in which a district court is exercising federal question jurisdiction, the existence of pendent state law claims (like Plaintiff's Ohio claims in this case) does not relieve the court of its obligation to apply the federal law of privilege. *Hancock*, 958 F.2d at 1373.

F.2d at 640. Given that fact, much of the information requested in Interrogatory No. 7—such as the name and address of psychiatrists with whom Plaintiff has consulted—is not privileged.

Defendant acknowledges that the medical records themselves are covered by the privilege. Thus, the next question for the Court is whether Plaintiff waived the privilege by claiming damages for emotional distress.

**D. <u>Waiver</u>**

In recognizing the psychotherapist-patient privilege, the Supreme Court acknowledged that, "[l]ike other testimonial privileges, the patient may of course waive the protection." *Jaffee*, 518 U.S. at 15 n.14. In the Sixth Circuit, a patient waives the privilege when he or she puts his/her emotional state "at issue" in the case. *Maday v. Public Libraries of Saginaw*, 480 F.3d 815, 821 (6th Cir. 2007).

The *Maday* court held that a plaintiff put her emotional state at issue—such that she waived the psychotherapist-patient privilege applicable to her mental health records—by seeking emotional distress damages for alleged age discrimination. *Id*. at 821. Following *Maday*, in *White v. Honda of America Manufacturing, Inc*., a judicial officer from this district held that a plaintiff waived the psychotherapist-patient privilege with respect to her mental health records when she claimed emotional distress damages for alleged violations of Title VII and Ohio's employment discrimination statute. 2008 WL 5431160, at *2; *see also McMullen v. Reserves Network, Inc*., No. 12 CV 2140, 2013 WL 395501, at *1 (N.D. Ohio Jan. 31, 2013) ("It is well settled that a plaintiff waives any privilege by putting her medical or mental condition at issue. That waiver includes making distress claims in an employment discrimination lawsuit.")

Here, the parties dispute whether Plaintiff can avoid the consequences of waiver by claiming only "garden variety" emotional distress, which, according to Plaintiff, constitutes

"'damages limited to the typical negative emotional impact on the plaintiff that obviously flow from the defendant's alleged misconduct.' " (ECF No. 46, at 3 (citing *Lamb v. Hazel*, No. 5:12-CV-00070, 2013 WL 1411239, at *7 (W.D. Ky. Apr. 8, 2013)).) Plaintiff argues that a party claiming only "garden variety" damages has not put his or her mental status "at issue" in a way that would waive the psychotherapist-patient privilege.

As an initial manner, the Court notes that different courts have used the term "garden variety" damages to mean different things, which caused some confusion in the briefing and in the parties' interpretation of relevant caselaw. In the employment context, many courts have used the term "garden variety" distress to refer to a party's embarrassment or humiliation immediately following an adverse employment action. *See, e.g.*, *Butler v. Rue 21, Inc.*, No. 1:11-CV-9, 2011 WL 1484151, at *2 (E.D. Tenn. Apr. 19, 2011) (using the term "garden variety" to refer to allegations of short-lived humiliation and embarrassment, pain and suffering, and emotional distress that did not result in any physical manifestations of emotional injury); *O'Barr v. United Parcel Serv., Inc.*, No. 3:11-CV-177, 2013 WL 2635539, at *2 (E.D. Tenn. June 12, 2013) (discussing "garden variety type of embarrassment and humiliation damages" (internal quotations omitted)); *accord Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999) (discussing damages "limited to compensation for humiliation, embarrassment, and other similar emotions," described another way as "the negative emotions that [the Title VII plaintiff] experienced essentially as the intrinsic result of the defendant's alleged conduct"). Those courts concluded that, by limiting their emotional distress claims to short-term embarrassment, humiliation, and other negative emotions, the plaintiffs did not put their mental states "at issue" in a way that would waive the privilege. *See Butler*, 2011 WL 1484151, at *2; *O'Barr*, 2013 WL 2635539, at *2; *Santelli*, 188 F.R.D. at 309.

In contrast, a judicial officer from this district used the term "garden variety" to distinguish claims of embarrassment/humiliation, referring instead to a more traditional claim for emotional injury that encompasses the ongoing consequences of embarrassment/humiliation. *See Kennedy v. Cingular Wireless, LLC*, No. 2:06-CV-0975, 2007 WL 2407044, at *3 (S.D. Ohio Aug. 20, 2007). The *Kennedy* court held that the medical records of a plaintiff claiming traditional emotional distress—i.e., damages that exceed short-term embarrassment/humiliation and seek recovery for the ongoing consequences of those emotions—are discoverable. 2007 WL 2407044, at *3. As such, although the *Kennedy* court used the term "garden variety" differently from most courts, it applied the same general rule as the courts referenced above.

Other courts, as well as the Magistrate Judge in this case, framed the inquiry differently and asked what the plaintiff did not allege. Those courts noted that a plaintiff does not allege "garden variety" damages if any of the following are present:

> (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a).

*Lamb v. Hazel*, No. 5:12-CV-00070, 2013 WL 1411239, at *7 (W.D. Ky. Apr. 8, 2013) (quoting *Ford v. Am. River Transp. Co.*, No. 5:11-CV-00094, 2012 WL 4049467, at *3 (W.D. Ky. Sept. 13, 2012)); *see also* ECF No. 40, at 10 (citing *O'Sullivan v. Minnesota*, 240 F.R.D. 325, 328 (D. Minn. 1997)). Those courts would agree that parties claiming short-lived embarrassment/humiliation do not waive the psychotherapist-patient privilege, but would find that claims invoking one of the five circumstances set forth above do waive the privilege.

The rule that emerges from the above-referenced case law is that, when a plaintiff limits his or her damages claim to short-term negative emotions that would typically flow from an

adverse employment action—i.e., what the parties refer to as "garden variety" damages—he or she does not put his/her mental state "at issue" so as to waive the psychotherapist-patient privilege. This "garden variety" approach is often referred to as a "middle ground" approach to waiver. *See, e.g., Fitzgerald v. Cassil*, 216 F.R.D. 632, 637 (N.D. Cal. 2003).

In his Order, the Magistrate Judge accepted Plaintiff's position that her "garden variety" allegations of emotional distress did not put her mental state at issue so as to waive the psychiatrist-patient privilege. That conclusion necessarily hinges on two findings: (1) that the "garden variety" approach represents the law of this Circuit,[2] and (2) that Plaintiff's allegations of emotional distress fall within that definition of "garden variety." But even assuming, *arguendo*, that the Magistrate Judge's first finding is correct, the Court finds the Magistrate Judge's second finding to be contrary to law.

It goes without saying that the Court cannot simply accept Plaintiff's assertion that her allegations of emotional distress constitute "garden variety" allegations. Instead, the Court must examine the substance of Plaintiff's allegations to determine what type of damages she is pursuing. *See Butler*, 2011 WL 1484151, at *2. As noted above, Plaintiff testified in her deposition that Defendant's conduct caused her to suffer stress and sleep deprivation that is still ongoing. Such a claim is less analogous to allegations of short-term embarrassment/humiliation, which would fall within the "garden variety" exception to waiver, and more analogous to a traditional claim for emotional injury that would permit the jury to award damages for some type of ongoing consequences from the humiliation or embarrassment or distress, which would not fall within the "garden variety" exception as the term typically is used. *See Kennedy*, 2007 WL

[2] To the extent the Magistrate Judge intended to go further with his holding and adopt an even narrower approach to waiver—in which a patient asserting emotional distress damages does not waive the psychotherapist-patient privilege unless he or she affirmatively relies on the confidential communications at issue—the Court finds that conclusion to be contrary to this Court's prior holdings in *White* and *Kennedy*. *See White*, 2008 WL 5431160, at *2; *Kennedy*, 2007 WL 2407044, at *3. Moreover, the Sixth Circuit's comments in *Maday* gave no indication that it would limit the doctrine of waiver in such a way. *See* 480 F.3d at 821.

240744, at *3; *see also Green v. Michigan Dep't of Nat'l Resources*, No. 08-14316, 2009 WL 1883532, at *2–3 (E.D. Mich. June 30, 2009) (holding that the plaintiff asserted more than garden variety emotional distress when he allegedly suffered ongoing depression and anxiety as well as physical manifestations of his distress). Thus, although the *Kennedy* court used the term "garden variety" to mean the opposite of what the parties intend it to mean in this case, its holding is directly on point and demonstrates why Plaintiff's position in this dispute is incorrect. *See Kennedy*, 2007 WL 240744, at *3;[3] *see also White*, 2008 WL 5431160, at *2–3.

Alternatively, the Court finds that Plaintiff's claim of ongoing sleep deprivation constitutes "an allegation of a specific mental or psychiatric injury or disorder," which the Magistrate Judge acknowledged would waive the privilege. *See* ECF No. 40, at 10. As such, the Court concludes that Plaintiff put her mental state at issue as the Sixth Circuit used the term in *Maday*. Plaintiff therefore waived the psychotherapist-patient privilege that would have applied to her medical records.[4]

As a final note, the Court acknowledges the concerns the Magistrate Judge raised in his April 8, 2014 Order, but finds those concerns to be misplaced in this case. In justifying his holding that claims for emotional distress should not waive the psychotherapist-patient privilege, the Magistrate Judge noted that "defendants will often seek the plaintiff's mental health treatment records—of any and every description—going back 5, 10, or even 20 or more years,"

---

[3] The Magistrate Judge appears to have incorrectly interpreted *Kennedy* as extending the definition of "garden variety" damages to include damages for the ongoing consequences of emotional distress. *See* ECF No. 40, at 12–13. But, as stated above, the *Kennedy* court used the term "garden variety" in the opposite way that most courts use the term. Contrary to the Magistrate Judge's suggestion, and regardless of the way the *Kennedy* court used the term "garden variety," *Kennedy* supports Defendant's position and stands for the general rule that allegations of emotional distress that exceeds short-lived embarrassment/humiliation put the plaintiff's mental condition at issue and waive the psychotherapist-patient privilege. *See Kennedy*, 2007 WL 2407044, at *3.

[4] The Magistrate Judge's suggestion that Plaintiff "limit her testimony at trial on this issue to that she gave during her deposition," (ECF No. 40, at 13), does not account for the fact that Plaintiff testified in her deposition to suffering long-term stress and sleep deprivation. Plaintiff's willingness to stipulate that "her emotional distress did not continue beyond the dates of termination and reemployment, and did not require her to seek treatment," (ECF No. 46, at 1), does not alter the Court's analysis.

(ECF No. 40, at 9), thereby suggesting that a plaintiff's private thoughts needlessly will be exposed so a defendant can fish for alternative explanations for the alleged distress. Here, however, the Court has already noted that Defendant's discovery requests must be limited on relevance grounds and that medical records unrelated to Plaintiff's mental health and/or claimed sleeplessness are not discoverable. Had Defendant sought mental health records dating back twenty years, the Court could have imposed a temporal limitation. Moreover, the records sought in this case are a far cry from a fishing expedition, as all parties agree that Plaintiff underwent another significant stressor (her husband's illness and surgery) at the same time she was terminated from Defendant's employ. It would be fundamentally unfair to allow Plaintiff to assert that Defendant's actions caused her mental distress, but not allow Defendant to explore another stressor that all parties agree was present at or around the same time.

For all of these reasons, the Court concludes that the Magistrate Judge's April 8, 2014 Order is contrary to law. The Court therefore **SUSTAINS** Defendant's objections and **SETS ASIDE** the Magistrate Judge's Order in its entirety. To the extent Defendant's motion to compel seeks relevant medical records, the Court **GRANTS** the same.

**E. Releases**

The next and final issue for the Court is whether Plaintiff should be compelled to sign releases to permit her medical providers to transfer her records directly to Defendant. Plaintiff contends that she should be permitted to obtain her medical records and produce them to Defendant "with *in camera* review of records that [Plaintiff] believes are unduly prejudicial, implicate the privacy rights or [Plaintiff] or any other third-party (including her spouse) or are not relevant to the conditions at issue in this case." (ECF No. 46, at 9.)

Having reviewed the parties' briefs and authority cited therein, the Court notes that persuasive authority supports both parties' positions. *Compare McMullen*, 2013 WL 395501, at *1 ("Given Plaintiff's claims in this case which put her physical and mental health at issue, it is clear that she must sign medical releases for all of her providers.") *with Ward v. ESchool Consultants, LLC*, No. 2:10-cv-866, 2011 WL 4402784, at *3 (S.D. Ohio Sept. 21, 2011) (concluding that the plaintiff should not be compelled to sign releases and should instead be permitted to request her medical records and produce them herself). Courts taking the latter approach generally have reasoned that a party should be permitted to request and review his or her own records and produce only those that are relevant, responsive, and not privileged. *See, e.g., Ward*, 2011 WL 4402784, at *3; *Moody v. Honda of Am. Mfg., Inc.*, No. 2:05-cv-0880, at *5 (S.D. Ohio June 26, 2006). Indeed, Plaintiff seeks to obtain and produce her records in this case so that she may seek *in camera* review of records she deems irrelevant, unduly prejudicial, or violative of her privacy.

The Court concludes that neither Plaintiff's concerns, nor the concerns expressed by the *Ward* and *Moody* courts, are present in this case. The Court has already concluded that Defendant must limit its discovery requests to medical information from mental health providers and/or that is or could be related to her alleged stress and sleep deprivation. Once Plaintiff identifies the appropriate providers, the corresponding medical records are responsive and reasonably calculated to lead to the discovery of admissible evidence.[5] Regarding privilege, the Court has already concluded that Plaintiff waived the applicable psychotherapist-patient privilege with respect to those records. There is no indication that any other privileges will be implicated. And finally, regarding Plaintiff's privacy concerns, the Court entered an Agreed

[5] Plaintiff's concern that relevant medical records may be "unduly prejudicial," (ECF No. 46, at 9), implicates Federal Rule of Evidence 403 and goes to the issue of admissibility, not whether the records are discoverable under Federal Rule of Civil Procedure 26.

Protective Order in this case on September 23, 2013, which expressly covers "protected health information subject to HIPAA, 45 C.F.R. § 164.512," and "private medical records." (ECF No. 21, at 2.) The Court sees no need for *in camera* inspection of medical records that the parties have already agreed to treat as confidential under the Agreed Protective Order.

As such, the use of releases to obtain Plaintiff's medical records directly from her health care providers represents the most efficient and economical way for Defendant to obtain those records. The Court therefore **GRANTS** Defendant's motion to compel Plaintiff to execute releases for her medical information.

## IV. CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** Defendant's objections to the Magistrate Judge's April 8, 2014 Order (ECF No. 43), **SETS ASIDE** that Order (ECF No. 40), and **GRANTS** Defendant's motion to compel production of medical information (ECF No. 31). Plaintiff is hereby **ORDERED** to revise her outstanding discovery responses and execute the appropriate releases within thirty (30) days of the date of this Opinion & Order.

**IT IS SO ORDERED.**

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**